FILED IN CHAMBERS
U.S.D.C. - Atlanta

FEB 05 2014

By: [signature]
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>PATRICE HAIRSTON, also known as Claudette Harris | CRIMINAL CASE NO.<br>1:13-CR-199-1-ODE |

ORDER

This criminal case comes before the Court on objections [Doc. 79] filed by Patrice Hairston ("Hairston" or "Defendant") to a Report and Recommendation ("R&R") entered on December 3, 2013, by United States Magistrate Judge Gerrilyn G. Brill [Doc. 70-1]. Magistrate Judge Brill recommended this Court deny Defendant's motion to suppress evidence [Docs. 52 & 61][1],[2] and certified this case ready for trial [Doc. 72].

For the following reasons, Defendant's objections to the R&R [Doc. 79] are OVERRULED, and the R&R [Doc. 70-1] is ADOPTED. As a result, Defendant's motion to suppress [Docs. 52 & 61] is DENIED.

I. **Background**[3]

Defendant Hairston is charged with conspiracy to commit mail fraud and wire fraud, as well as with substantive counts of mail

---

[1]Defendant perfected her oral motion to suppress made on September 4, 2013 [Doc. 52] on October 15, 2013 [Doc. 61].

[2]Judge Brill denied as moot Defendant's motion to suppress statements [Doc. 44] based on the Government's assurance that it will not use Defendant's statements at trial [Doc. 70-1 at 1 n.1].

[3]The Court restates the facts as outlined in the R&R, noting and addressing any objections asserted by Defendant below.

fraud, and wire fraud, in violation of Title 18, United States Code, sections 1349, 1341, and 1343. According to the indictment, Defendant and others engaged in a scheme to defraud Quicken Loans and other mortgage companies by using false documents and "straw borrowers" to obtain mortgage loans [See Doc. 2]. The instant motion seeks to suppress evidence that was seized from Defendant's purse on the day of her arrest, January 22, 2009.[4]

Some time prior to January 22, 2009, federal law enforcement agents received information from Quicken Loans that a fraudulent loan closing was going to take place on January 22, 2009 at an attorney's office in DeKalb County, Georgia [Tr. at 26-28]. On the day of the closing, federal agents and DeKalb County law enforcement officers gathered outside of the closing office [Tr. at 4-5, 27-28, 47]. Among the officers present was Angel S. Lewis, then a detective with the DeKalb County Police Department [Tr. 4-5].[5] DeKalb County Police Sergeant John Germano ("Sgt. Germano") also participated in the operation [Tr. at 47].

At about 11:00 a.m., two women later identified as Heather Mooney ("Mooney")[6] and Sarah Hyldahl ("Hyldahl") arrived at the closing location [Tr. at 5]. After waiting about twenty minutes,

---

[4]Magistrate Judge Brill held an evidentiary hearing on the instant motion on September 4, 2013. References to the evidentiary hearing transcript are cited as "Tr. at" page number. The transcript is Doc. 55 on the docket.

[5]By the time of the hearing, Detective Lewis had become Investigator White [Tr. 3, 47]. She will be referred to as "Detective Lewis," using her name and title at the time of the relevant events.

[6]Some of the documents filed in the instant case refer to Mooney as "Moomey" [See Docs. 64 at 8 & 69 at 2].

2

the police and federal officers went into the office where the closing was to take place [Tr. at 5-6]. The officers informed those present for the closing that the officers were investigating mortgage fraud [Tr. at 6]. They separated and interviewed the people that were present, including Mooney and Hyldahl [Id.].

Detective Lewis was assigned to interview Mooney, who was supposed to be the purchaser of a $260,000 house [Tr. at 6]. Mooney told Detective Lewis that she did not have a job or money to close on the house, but that her boyfriend had arranged the transaction with Hyldahl, who had put together all the information [Tr. at 7].

Hyldahl admitted that she had recruited Mooney to act as a straw buyer. She told the officers that the supporting documents (bank statements, W-2s, and pay stubs) regarding the loan to Mooney were false. She said that Defendant had made the false W-2s and pay stubs for the Mooney transaction, and another person had created false bank statements [Tr. at 30]. Hyldahl also told the officers that several people, including herself and Defendant, were to share $75,000, which was the amount of money that would be generated by the Mooney loan after the builder's mortgage was paid [Tr. at 31-32]. Hyldahl then advised that Defendant was supposed to bring the down payment money to the closing and was expected to arrive soon in a blue Chrysler [Tr. at 10, 32-33]. Shortly thereafter, uniformed police officers who were waiting outside reported that Defendant had arrived at the building in a blue Chrysler [Tr. at 12, 48].

The Government and Defendant offer substantially different accounts of what happened next. According to the Government's

3

version of events, which Judge Brill adopted, Detective Lewis and Sgt. Germano went outside to the parking lot and observed a woman (later identified as Defendant) exiting the Chrysler [Tr. at 12]. Detective Lewis approached the woman as soon as the latter got out of her car and asked if she was Patrice Hairston [Id.]. The woman acknowledged that she was Hairston, and Detective Lewis then placed her under arrest and put her in handcuffs [Id.]. Defendant had been carrying a purse with her as she left her car [Id.]. Detective Lewis searched the purse pursuant to Defendant's arrest and located a SunTrust official check for $9,124.00 bearing the name "Heather Moomey" and payable to "Atty. Barber" [Tr. at 12-13; Gov. Ex. 1]. The police officers then took Defendant to police headquarters [Id. at 13].

By contrast, Defendant claims that the police unlawfully searched her purse which was not on her person at the time of her arrest. Defendant's version of events is set forth in detail in Part III.C.1.

## II. Magistrate Judge Brill's Recommendations

In her R&R filed December 3, 2013, Judge Brill recommended that Defendant's motion to suppress [Docs. 52 & 61] be denied.

Judge Brill first rejected Defendant's testimony from the evidentiary hearing and accepted the version presented by the Government witnesses [Doc. 70-1 at 5 n.4]. She then determined that the officers had probable cause to arrest Defendant based on the information they had received from Mooney and Hyldahl prior to Defendant's arrival [Id. at 7-8]. Finally, Judge Brill concluded that the officers were allowed to search Defendant's purse in connection with her lawful arrest [Id. at 8].

4

III. **Discussion**

A. ***Standard of Review***

Motions to suppress are governed by 28 U.S.C. § 636(b)(1)(B), which provides that "a judge may . . . designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of [the] motion." 28 U.S.C. § 636(b)(1)(B).

The Court may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1); FED. R. CRIM. P. 59(b)(3); United States v. Raddatz, 447 U.S. 667, 673-74 (1980).

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Criminal Procedure 59(b), the Court must conduct a de novo review of those portions of the R&R to which Defendant timely and specifically objected. In making its de novo determination, the court considers the record which has been developed before the magistrate judge. Raddatz, 447 U.S. at 676. The Court may accept or reject the magistrate judge's credibility determinations, recognizing that the magistrate judge is in the better position to assess the credibility of the witnesses he sees and hears. Id. at 681 n.7. De novo review does not mean that the court must hold a new hearing to determine credibility disputes or grant further argument. See id. at 676.

If there is no specific objection, the Court reviews the R&R for clear error. Tauber v. Barnhart, 438 F. Supp. 2d 1366, 1373-74 (N.D. Ga. 2006) (Story, J.)(citing HGI Assocs., Inc. v. Wetmore Printing Co., 427 F.3d 867, 873 (11th Cir. 2005)). The Court

5

deems Defendant to have waived her right to request review of any portions of the R&R to which she failed to timely and specifically object. FED. R. CRIM. P. 59(b)(2).

### B. *Defendant's Specific Objections*

Defendant's main objection to the R&R derives from Judge Brill's rejection of Defendant's testimony. Defendant's remaining objections attack Judge Brill's conclusions of law. Specifically, Defendant argues that (1) the police did not have probable cause for Defendant's arrest; (2) the warrantless search of her purse was illegal; and (3) the police did not have a reasonable suspicion to detain her. Defendant also requests a new evidentiary hearing [Doc. 79 at 1-3].

### C. *Analysis of Defendant's Specific Objections*

#### 1. **Judge Brill's Rejection of Defendant's Testimony**

Defendant complains that Judge Brill resolved the conflict in the two different versions of events in favor of the version presented by the Government. Although Judge Brill did not specify the reasons for rejecting Defendant's testimony, her conclusion is fully supported by the transcript from the evidentiary hearing.

To begin with, Defendant's statement that her testimony "simply makes sense" is not persuasive. Defendant testified that she pulled up to the location and just sat in her car [Tr. at 37]. At some point a woman in "some sort of uniform" tapped on the window of Defendant's car [Id. at 37]. Defendant testified that she was not sure if the woman in the uniform was Detective Lewis because Detective Lewis was pregnant at the time of the hearing and "look[ed] different" [Id. at 38]. The uniformed female officer asked Defendant if she was Patrice Hairston, and Defendant

answered in the affirmative [Id. at 43]. The female officer then asked Defendant to exit the vehicle, but Defendant refused to do so [Id. at 37].

Soon thereafter, an FBI agent and a Postal Service Inspector came out and told Defendant to step out of her vehicle [Id. at 37-38]. She exited her car--taking only her keys and leaving her purse behind--and locked the door [Tr. at 38, 44]. The officers escorted her into the building where she remained for two hours [Id. at 38-39, 42]. During that time, she asked to use the restroom, leaving her keys on the table at which she had been seated [Id. at 38]. When she returned, she saw the same young lady in uniform who had tapped on her car window earlier go through her purse that was supposed to have been in her locked car [Id.]. Defendant testified that she does not recall being handcuffed when she first exited her car, and she could not remember when she was first handcuffed or by whom [Id. at 40-43].

By contrast, the Government's version of events, as stated above, was corroborated by all three Government witnesses who testified at the evidentiary hearing--Detective Lewis, Sgt. Germano and FBI Special Agent Stites. According to Sgt. Germano, Detective Lewis was not wearing a uniform on that day [Tr. at 47, 48]. Both Detective Lewis and Sgt. Germano stated that they arrested and handcuffed Defendant as soon as she came out of the vehicle and identified herself [Id. at 12-13, 49]. They also testified that Defendant exited her vehicle with her purse and that they searched the purse and recovered the check after Defendant was placed under arrest [Id.]. At that point, Defendant was taken to police headquarters for questioning, and she never

7

went inside the building [Tr. at 13, 49]. Agent Stites, who did not witness Defendant's arrest and the search of her purse because he was inside the building, testified that he heard that Defendant had arrived and that she been arrested by the Dekalb County police in the parking lot. He then went to the parking lot and saw Defendant in handcuffs [Id. at 35].

Defendant's version is at odds with the accounts of the three Government witnesses on four critical points: (1) that the female police officer who tapped on Defendant's window and who Defendant claims searched her purse was wearing a uniform; (2) that Defendant left her purse in the car and exited the vehicle with only her keys; (3) that she could not remember when she was placed under arrest and handcuffed; and (4) that she was escorted into the office building where she remained for close to two hours.

Defendant does not point to contradictions or inconsistencies in the testimony of the Government witnesses. Rather, she submits that, because

> [t]he police were willing to use their authority to enter a location without permission and to hold persons under the functional equivalent of an arrest, it is not a leap to believe that [Defendant's] purse was searched while separate from her person, especially since the police had formed a belief she was carrying a check for the closing

[Doc. 79 at 2-3].

The Court finds this argument insufficient to warrant a new evidentiary hearing. First, Judge Brill noted (and Defendant does not challenge this statement) that the officers' entry into the office is not an issue in the instant motion [Doc. 70-1 at 3]. Furthermore, Detective Lewis testified that the persons in the office were told they were not under arrest and that they could

8

leave [Tr. at 15-17]. Finally, the officers' allegedly illegal conduct vis-á-vis the individuals present at the office on that morning does not lend credibility to Defendant's account.

In sum, having carefully reviewed the transcript from the evidentiary hearing, the Court finds that Judge Brill properly rejected Defendant's testimony in favor of the version of events presented by the Government witnesses.[7]

### 2. Defendant's Remaining Objections

"A warrantless search incident to an arrest based on probable cause does not violate the Fourth Amendment." United States v. Blackley, 439 F. App'x 803, 805 (11th Cir. 2011)(citing United States v. Floyd, 281 F.3d 1346, 1348 (11th Cir. 2002)). A search incident to an arrest can include a search of bags under the control of the arrestee. See United States v. Jones, 218 F. App'x 916, 919 (11th Cir. 2007)(finding no Fourth Amendment violation where officers searched a black bag in the defendant's immediate control at the time of his arrest).

Thus, the main inquiry for purposes of the instant motion is whether Defendant's arrest was supported by probable cause. An affirmative answer to this question automatically resolves, under

---

[7]Defendant contends that the police should have, at most, held Defendant's purse and obtained a warrant [Doc. 79 at 3]. However, the police would not have been able to "hold" Defendant's purse if the purse had, in fact, been in the car, as Defendant claims. On the contrary, they only would have been able to "hold" the purse if it had been on her person, as the Government witnesses testified.

9

the circumstances of the instant case, Defendant's contention that the search of her purse was unlawful.[8]

"Probable cause requires more than mere suspicion, but does not require convincing proof." Bailey v. Bd. of Comm'rs, 956 F.2d 1112, 1120 (11th Cir. 1992). "'In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" Illinois v. Gates, 462 U.S. 213, 231 (1983)(omission in original)(quoting Brinegar v. United States, 338 U.S. 160, 175 (1949)).

"'Probable cause to arrest exists when [officers] have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime.'" Floyd, 281 F.3d at 1348 (quoting United States v. Gonzalez, 969 F.2d 999, 1002 (11th Cir. 1992)); see also Gates, 462 U.S. at 238 (probable cause exists when "there is a fair probability that [the evidence of the crime] will be found in a particular place").

"In determining whether an informant's tip rises to the level of probable cause, we assess the totality of the circumstances." Ortega v. Christian, 85 F.3d 1521, 1525 (11th Cir. 1996)(citing Gonzalez, 969 F.2d at 1002; United States v. Campbell, 920 F.2d 793, 796-97 (11th Cir. 1991)). "We consider the relevance of factors such as the informant's 'veracity,' 'reliability,' and

---

    [8]This is because the Court has already accepted the testimony of Detective Lewis and Sgt. Germano that Defendant had her purse on her person when she was arrested.

10

'basis of knowledge.'" Ortega, 85 F.3d at 1525 (citing Gonzalez, 969 F.2d at 1003)(citations omitted)). "In addition, the corroboration of the details of an informant's tip through independent police work adds significant value to the probable cause analysis." Ortega, 85 F.3d at 1525 (citing Gonzalez, 969 F.2d at 1003). The main question is whether the tip "exhibited sufficient indicia of reliability" to justify the subsequent . . . arrest. United States v. Gibson, 64 F.3d 617, 620 (11th Cir. 1995)(citing Alabama v. White, 496 U.S. 325, 332 (1990)).

Judge Brill concluded that the officers had probable cause to believe Defendant was about to commit mortgage fraud based on the following undisputed facts: (1) federal and state law enforcement officers had received information from Quicken Loans that the closing at issue, which was one of a series of false loans, was going to take place on that day and in that law office [Tr. at 4]; (2) the agents interviewed Mooney and Hyldahl and determined that Hyldahl had arranged the transaction, whereas Mooney was unemployed, had no money with her, and knew very little about the closing [Id. at 7-8]; (3) Hyldahl told the agents that the documents in support of the loan application were false and that they had been made by Defendant and another person [Id. at 10-11, 32]; (4) she stated that the difference between the builder's mortgage and the sales price--about $75,000--was to be divided between the participants in the transaction, including Hyldahl and Defendant [Id. at 31-32]; (5) she told the agents that Hairston was about to arrive with the down payment check in a blue Chrysler [Id. at 33]; and (6) Defendant arrived in a blue Chrysler, and she had with her a check for $9,124 bearing the name "Heather Moomey"

11

and payable to "Atty. Barber" [Id. at 10, 13, 33-34, 49; Gov. Ex. 1]. The Court finds that this evidence supports Judge Brill's finding of a probable cause for Defendant's arrest.[9]

Defendant argues that Mooney and Hyldahl were unknown to the police, they had no history of providing reliable information, and each of them had a motive to lie. However, as Judge Brill noted, Mooney and Hyldahl were not anonymous informants; in fact, they implicated themselves when they confessed to the scheme and their role therein. Hyldahl named Defendant as the individual bringing the down payment check to the closing, and her statement was corroborated by Defendant's actual arrival at the location in the very car Hyldahl had described to the agents.

Defendant analogizes the circumstances in the instant case with the facts in Campbell. In that case, the United States Court of Appeals for the Eleventh Circuit reversed the district court's finding that the officers had probable cause to arrest the defendant based on reliable information provided by an unreliable informant. Campbell, 920 F.2d at 796-97.

Defendant's reliance on Campbell is clearly misplaced. In the instant case, Judge Brill did not find that Hyldahl was unreliable, and this Court discerns no indicia of a lack of reliability. Defendant's proposition that Hyldahl was unreliable merely because she was unknown to the police and was attempting to cooperate with the agents is unsupported.

---

[9]Defendant's argument that the police should have attempted to seek a search warrant for the purse is unsupported both by the facts of this case and the authority she cites in her brief in support of the instant motion.

12

In sum, Judge Brill correctly determined that, under the totality of the circumstances in this case, police had probable cause to arrest Defendant.[10]

## IV. **Conclusion**

For the reasons above, Defendant's objections to the R&R [Doc. 79] are OVERRULED, her request for a new evidentiary hearing is DENIED, and the R&R [Doc. 70-1] is ADOPTED IN ITS ENTIRETY. As a result, Defendant's motion to suppress [Docs. 52 & 61] is DENIED.

SO ORDERED this 5 day of February, 2014.

ORINDA D. EVANS
UNITED STATES DISTRICT JUDGE

---

[10]Defendant also submits that the police lacked reasonable suspicion to detain Defendant. The Court has already found that the police had probable cause to arrest Defendant; thus, Defendant's argument fails.

13